**SO ORDERED.**

**SIGNED July 12, 2005.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

IN RE: RAPIDES PRIMARY HEALTH CARE CENTER, INC.    CASE NO. 02-80758

DR. NATALIE PHILLIPS
    (Plaintiff)

VERSUS    ADVERSARY NO. 04-8010

RAPIDES PRIMARY HEALTH CARE
    (Defendant)

**REASONS FOR DECISION**

This matter came before the Court on the defendant's Motion for Partial Summary Judgment and plaintiff's opposition. This is a Core Proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. This Court makes the following Findings of Fact and Conclusions of Law in accordance with F.R.B.P. 7052. Pursuant to these reasons, the Motion for Partial Summary Judgment is GRANTED.

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

The debtor, Rapides Primary Health Care Center, Inc., filed its Chapter 11 case on May 10, 2002. Due to extensive litigation, including the filing of competing plan, a plan was not confirmed until September 11, 2003.[1] Between the date of filing and the date of confirmation, the debtor entered into a contract of employment with the plaintiff, Dr. Natalie Phillips, who served the debtor as a Medical Director and family practice physician from August 1, 2002 to August 3, 2003, when she voluntarily terminated her employment with the debtor.[2] At that time, she alleges she was owed unpaid wages, including payment for unused vacation time and sick leave, and now is owed penalties and attorneys fees and costs under Louisiana law for the debtor's failure to pay her claims. Plaintiff filed a complaint in Alexandria City Court on December 5, 2003, seeking recovery of these claims, which was removed by the defendant to this Court on April 12, 2004.[3] Ms. Phillips filed a proof of claim in the bankruptcy case on November 4, 2004 for $80,888.54, and alleges part of that claim is an unsecured priority claim under §507(a)(1). Debtor filed an objection to the claim on

---

[1] A motion for final decree was granted on November 19, 2003, but no order to that effect has been submitted.

[2] The contract is dated August 2, 2003, and contemplated an employment term of 18 ½ months ending February 28, 2004. Dr. Phillips claims that she would not have accepted employment had she known the employer had filed bankruptcy and claims this information was withheld from her. Affidavit of Dr. Natalie Phillips, Exhibit A. However, the "Exit Interview" notes indicate that she resigned, had another job, and are silent as to the bankruptcy issue. (Exit Interview Notes, Phillips Exhibit 2, Attachment to Proof of Claim filed July 6, 2004.) It appears that Dr. Phillips did not give the requisite 120 day notice of termination required under the Contract, Paragraph 6.

[3] A motion for sanctions was filed by the debtor for violation of the automatic stay in filing the Alexandria City Court suit. Although that Motion was withdrawn on June 8, 2004, counsel for the defendant revived its reference to the Motion for sanctions in the brief on Motion for Partial Summary Judgment.

2

November 15, 2004, and the objection to the claim was subsequently consolidated with the instant adversary proceeding. Plaintiff also filed a Motion to Request Payment of Administrative Expenses in the amount of $24,478.52, representing that portion of the claim plaintiff considers priority under §507(a)(1), for "wages, salaries and commissions consist[ing] of unpaid vacation time, sick leave, hospital patient care and excessive patient care as provided in her contract, and were actual, necessary costs and expenses of preserving the estate of the debtor." (Case docket no. 222.)

Counsel for defendant filed the instant Motion for Partial Summary Judgment, which was opposed by the plaintiff. Briefs were filed and this matter was heard on June 22, 2005. The Motion for Partial Summary Judgment urges that there is no basis for recovery by this plaintiff other than the filing of a claim as an unsecured creditor in the bankruptcy case. Plaintiff maintains the claim is entitled to payment in part under §507(a)(1) and §503(a) and (b)(1)(A) as a priority administrative expense claim. The Motion seeks a declaration as to whether the plaintiff is entitled to an administrative priority status to her claim for $24,478.52 , including $10,769.60 unpaid vacation time, unpaid sick leave totaling $8,077.20, hospital visits in the amount of $1,671.00 and excessive patient care in the amount of $3,960.00. Movant does not concede that the claims for hospital visits or excessive patient care are actually due; and that any sums due for same, plus any sums allowable for vacation or sick leave time should be tried on the merits.

In addition, the Plaintiff's claim includes statutory penalties and attorney fees arising under state law totaling $56,410.02.[4] These claims are asserted as "Unsecured state law claims." The movant asserts that the attorney fees and penalties allegedly due plaintiff under Louisiana law (and

---

[4]Proofs of Claim filed by Dr. Natalie Phillips July 6, 2004, and November 4, 2004. Plaintiff concedes that she was ultimately paid all of her "sign-on" bonuses under the contract, albeit with half of same being paid late.

3

which were asserted in the state court action removed to this court prior to judgment) are not recoverable in bankruptcy. Further, the movant notes that there were no stipulated or liquidated damages stipulated under the contract. (Memorandum in Support of Motion, Doc. no. 40, pgs. 3-4.) Movant requests that a judgment be entered on the pleadings denying the requests for attorney fees and penalties.

**Applicable Law**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

The order of allowances and the priority of claims under the Bankruptcy Code is a part of a carefully constructed scheme. *In re Phones For All, Inc*., 249 B.R. 426, 429 (N.D.Tex. 5/24/2000). Section 503(b)(1) provides for administrative expense claims, including the "actual, necessary costs and expenses of preserving the estate, including <u>wages, salaries or commissions</u> for services rendered after the commencement of the case." (Emphasis added.) The distribution scheme outlined in §507 provides first for the payment of administrative expenses under §503(b) before claims for wages, salaries, or commissions, <u>including vacation, severance, and sick leave pay earned by an individual</u> within 90 days before the date of the filing of the petition or the cessation of the debtor's business, whichever is first. (Emphasis added.) Those *pre-petition* claims are allowed a third priority. It is clear under this reading that Congress intended to draw a distinction between *pre-*

*petition* compensation as priority claims by including severance pay within that classification as a *third* priority claim under §507(a)(3) but by excluding severance pay from those claims for *post-petition* compensation entitled to administrative expenses treatment under §503(b)(1) and a *first* priority under §507(a)(1). These definitions are part of the public policy determinations reached by Congress. *In Re Phones for All,* 249 B.R. 426 (N.D.Tex. 5/24/2000); *See In re: FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 5/27/2003)(executory contract obligation providing for severance pay was not an administrative priority).

That said, the Courts have drawn other distinctions. Generally, these determinations involve employees whose relationship with the employer-debtor arose pre-petition. In *Phones for All,* the employee testified that he negotiated for severance pay as a part of his *pre-petition* contract. After his employer filed bankruptcy, his employment terminated when the debtor rejected the employment agreement under §365. If the contract was executory, and is rejected by the debtor, the Court concluded under its codal analysis that the employee's rejection claim might include the severance claim under the priority scheme (under §507(a)(3)) but that same severance benefit did not rise to the level of an administrative expense claim under §503(b)(1). Still, some courts have determined that benefits (including severance) may become administrative expense wages. In *Phones for All*, the Court rejected the notion that debtor relied on the bankruptcy estate post-petition to pay his employment compensation.

The opinion also noted that some courts have addressed *pre-petition* contractual arrangements where severance pay was earned post-petition or debtor gave the severance pay in lieu of other benefits. Then the Court noted that was the case in *In re Public Ledger, Inc.,* 161 F.2d 762 (3rd Cir.1947), cited by this plaintiff/claimant. As an alternative holding, the Court suggested that

5

awarding the claimant in *Phones for All* his entire severance package for less than a month's post-petition service would be disproportionate to any conceivable benefit derived from the services.

This Court finds nothing in the employment contract here that would rise to the level of a stipulated or liquidated damage claim or severance pay claim at all.[5] The contract expressly states that no additional compensation is due for the failure of the doctor to take all her vacation days (which could not be accumulated from one corporate fiscal year to the next) and also provides that "sick time is not an accrual." This Court reads these provisions as excluding receiving compensation in lieu of the usage of either vacation days or sick leave benefits. (Exhibit Phillips 1, attachment to Proof of Claim dated July 6, 2004.)[6]

Even if we could find a severance pay benefit arising under the contract, the service at issue is solely post-petition. The contract has already been held not to be an executory contract. We can perceive of no set of facts that could lead to a factual determination that Dr. Phillips' unilateral termination of her employment somehow benefitted the estate. It is clear that she did not rely on the estate for payment, for, by her own admission, it was her concern over the financial status of the

---

[5]In *Phones for All*, the contract provided for payment of severance pay for "Early Termination or Termination for Good Reasons" based on a formula using the annual rate of base pay plus the prior semi-annual bonus rate, annualized as of the date of termination. No such language appears in Dr. Phillip's contract.

[6]The "Exit Interview" Notes, Exhibit Phillips 2, attached to the Proof of Claim filed July 6, 2004, itemize the amounts due as follows: "Pay due for 8/18/03 Inpatient Charges 60% Physician 45% RPHCC 70% paid of the unused vacation (200 hours) deduct A.G. Edwards & insurance from paycheck Reimburse for toner cartridge $75.00." Dr. Phillips and the interviewer signed the exit interview document. There is no mention of severance pay in that document. However, the affidavit of Victor Kirk, attached to the Motion, asserts that Dr. Phillips had actually *exceeded* all of her vacation days and had been paid for same and that it was not the policy of the employer to pay for unused sick days. Even if there is an issue of fact as to whether the vacation days were or were not used, under the contract they do not appear to be compensable.

defendant that ultimately led to her voluntary termination (without the notice required under the contract). None of these facts militate in favor of the claimant, particularly where the contract by its terms excludes a monetary benefit for unused sick leave or vacation time.

Turning to the issue of the entitlement to attorney fees and penalties as set forth in the claim, in reliance on state law, this Court concurs with the movant's position that these sums are not recoverable in bankruptcy. As noted, the contract itself does not include any severance penalty. Nothing in the contract permits Dr. Phillips to assert a claim against the debtor for attorney fees or penalties. Counsel for the claimant has briefed the policy concerns behind these statutes and we do not disagree with the policy determinations of the Louisiana Legislature, only their application to these facts. The debtor-in-possession is subject to the jurisdiction of the bankruptcy court, and its assets are property of the estate under §541. Even if this court were to concede that the vacation and sick leave time were somehow recoverable, claims for attorney fees and penalties on such claims could and cannot rise to administrative expense claims under §503(b). Even if that hurdle could be met, at best they would not be allowable under the distribution scheme under the Bankruptcy Code. Attorney fees and similar costs are recoverable under §503 only where they are approved under Subsection (2) and §330, or Subsections 3, 4, and 5.

Thus, this Court concludes that the claimant here may not recover under §503(a) or §507(a)(3) any sums for unused vacation pay, sick leave, statutory penalties and/or attorney fees, thus leaving for determination after trial on the merits, whether or not she is entitled to recover the sums of $1,671.72 for hospital visits and excessive patient care in the amount of $3,960.00 as an administrative expense claim under §503(b)(1)(a). To do so, Dr. Phillips must prove not only that such sums are due and owing but also that they were necessary to preserve the estate.

7

## CONCLUSION

Pursuant to these reasons, the Motion for Partial Summary Judgment is **GRANTED.** A separate and conforming order will enter this date.

# # #